# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW R. LOPEZ,<br><br>   Plaintiff,<br><br> v.<br><br>FLOREZ, et al.,<br><br>   Defendants.<br>_____ | CASE NO. 1:08-cv-01975-LJO JLT PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THE DISMISSAL OF CERTAIN CLAIMS<br><br>(Doc. 23) |

  Plaintiff Andrew Lopez is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S .C. § 1983. Currently pending before the Court is Plaintiff's First Amended Complaint, ("FAC"), filed July 15, 2010. (Doc. 23.)

**I. SCREENING REQUIREMENT**

  The Court is required to review a case in which a prisoner seeks redress from a governmental entity or officer. 28 U.S.C. § 1915A(a). The Court must review the complaint and dismiss any portion thereof that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). If the Court determines the complaint fails to state a claim, leave to amend should be granted to the extent that the deficiencies in the pleading can be cured by amendment. Lopez v. Smith, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

The Civil Rights Act under which this action was filed provides a cause of action against any "person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States.]" 42 U.S.C. § 1983. To prove a violation of § 1983, a plaintiff must establish that (1) the defendant deprived him of a constitutional or federal right, and (2) the defendant acted under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Collins v. Womancare, 878 F.2d 1145, 1147 (9th Cir. 1989). "A person deprives another of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1993) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). In other words, there must be an actual causal connection between the actions of each defendant and the alleged deprivation. See Rizzo v. Goode, 423 U.S. 362, 370-71 (1976).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Nevertheless, a plaintiff's obligation to provide the grounds of entitlement to relief under Rule 8(a)(2) requires more than "naked assertions," "labels and conclusions," or "formulaic recitation[s] of the elements of a cause of action." Twombly, 550 U.S. at 555-57. The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 883 (2009) (quoting Twombly, 550 U.S. at 570). Vague and conclusory allegations are insufficient to state a claim under § 1983. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that

"fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

## II.   FIRST AMENDED COMPLAINT

Plaintiff is in custody of the California Department of Corrections and Rehabilitation and is incarcerated at the California State Prison in Corcoran, California ("CSP-Corcoran"). The incidents alleged in the complaint occurred from 2003 through June 2010. Plaintiff brings this action against eighteen named and four unnamed defendants, alleging deliberate indifference to serious medical needs, retaliation, as well as state law claims against defendants at CSP-Corcoran. More specifically, Plaintiff alleges as follows:

From 1984 to the present, Plaintiff has continued to suffer from herpes simplex keratitis, a disease affecting his eyes. (Doc. 23 at 16.) From 2006 to date, Defendant Macalvaine, a supervising registered nurse, and Defendants Florez, Reed, Thomas, and Clark II,[1] (all CSP-Corcoran Licensed Vocational Nurses ("LVN")), ignored existing medical orders by failing to provide Plaintiff with his prescribed medicine, Viroptic A, which was to be administered four times daily for his eye infection. (Id.) Additionally, during this same time period, these Defendants failed to schedule Plaintiff for follow-up appointments regarding the infection. (Id.) The actions of these LVNs were set in motion by policies supported by Defendants McGuinness, Clark I, and Macalvaine. (Id.)

In addition to the keratitis, on September 13, 2007, doctors at the Delano Regional Medical Center, an off site facility, performed a surgery to treat Plaintiff's deviated septum. (Doc. 23 at 17.) Following the surgery, the treating physician proscribed pain medication, (Vicodin), for pain associated with the surgery once the anesthesia wore off. (Id.) Following the surgery, Plaintiff was returned to CSP-Corcoran's Acute Care Facility ("ACF") for a health check prior to being returned to his cell. (Id. at 18.) At the ACF, Plaintiff was seen by Defendant Veronica, the registered nurse on duty. (Id.) Plaintiff showed Veronica the doctor's

---

[1] Defendant's First Amended Complaint refers to two Defendants with the same name but distinguishes between these Defendants by referring to them as Clark I and Clark II. For the sake of clarity the Court will do the same.

1   previous prescription for Vicodin and explained that he was in severe pain as the anesthesia was
2   wearing off from his surgery, however Veronica failed to provide the prescribed medication.  (Id.
3   at 18-19.)
4       After being denied medication at the ACF, Plaintiff was returned to his cell.  (Doc. 23 at
5   19.)  At approximately 5 p.m., Plaintiff encountered Defendant Reed, who was completing her
6   routine distribution of medications to prisoners.  (Id. at 19.)  Plaintiff advised Reed he was in
7   severe pain, and showed her his previous doctor's orders for pain medication, and also asked to
8   be seen by another nurse.  (Id.)  At this time, Reed advised Plaintiff that she did not have any
9   Vicodin for Plaintiff and did not provide Plaintiff with any medications.  (Id.)  Defendant Reed
10  returned at approximately 8 p.m., and again informed Plaintiff that she did not have pain
11  medication for him and continued to ignore his statements that he was in pain and his requests to
12  see Reed's supervisor.  (Id.)
13      At approximately 8:45 p.m., Plaintiff advised Defendant Jackson, a correctional officer,
14  that he was in severe pain and needed urgent care.  (Doc. 23 at 19.)  However, Defendant Jackson
15  failed to take action to ensure that Plaintiff received prompt medical attention.  (Id.)  Later that
16  evening, sometime after approximately 10 p.m., Defendant Romero (a correctional officer) began
17  his shift, and Plaintiff encountered Romero near his cell door.  (Id.)  On two separate occasions,
18  Plaintiff advised Romero that he was need of medical attention, however Romero similarly failed
19  to summon medical assistance and later stated that he had already "told them earlier" that
20  Plaintiff needed assistance.  (Id. at 21.)
21      On September 14, 2007, at approximately 8 a.m., Plaintiff spoke with Defendant Florez,
22  who had entered Plaintiff's housing unit.  (Doc. 23 at 21.)  Plaintiff showed Florez his doctor's
23  previous orders regarding the pain medications and informed Florez that he had not slept because
24  of his severe pain, was suffering from chest pains, and also was coughing up blood.  (Id.)
25  However Florez failed to ensure Plaintiff received his medication, and did not summon medical
26  attention causing Plaintiff to suffer an additional four hours without his pain medication.  (Id. at
27  21-22.)  Plaintiff did not receive the medications until 12:20 p.m. on September 14, 2007.  (Id.)
28  Plaintiff alleges that both Defendant Florez' and Reed's actions in denying his needed pain

4

medication were accomplished in retaliation for his submitting written complaints which detailed their misconduct and incompetence in providing inadequate medical care. (Id. at 29.)

On September 19, 2007, Plaintiff received his surgery related pain medication at 06:30 a.m. but then was transferred to an off-site medical facility for a post-op appointment. (Doc. 23 at 22.) At approximately 2 p.m., Plaintiff returned to the ACH and was seen by Defendant Doe # 2. (Id.) Though Plaintiff was to receive his pain medications at a rate of one dose every six hours, by the time Plaintiff returned to the ACH, Plaintiff had not been provided his pain medication for almost eight hours. (Id. at 22-23) Plaintiff informed Defendant Doe # 2 that he had not received his pain medication since his morning dose and that he was in severe pain. (Id. at 22) Though Defendant Doe # 2 could have easily verified Plaintiff's prescriptions with computers located in the ACH, Defendant Doe # 2 did not provide Plaintiff his medication. (Id.) In addition, Defendant Clark II was made aware of Plaintiff's return from the off-site appointment and that Plaintiff was complaining that he wanted his prescribed pain medications. (Id. at 22-23.) However, Clark II failed to promptly provide Plaintiff with these medications. (Id.) As a result, Plaintiff did not receive his medications until approximately 4:30 p.m. on September 19, 2007. (Id. at 22-23.) The actions of the various health care providers who acted to deny Plaintiff's pain medication following his surgery, were set in motion by policies supported by Defendants McGuinness, Clark I, and Macalvaine. (Id. at 27.)

In 2008, Plaintiff was diagnosed with degenerative disc disease related to Plaintiff's lower spine and to treat this condition, Plaintiff began receiving a prescription of Tylenol #3 pain medication. (Doc. 23 at 24.) However, on April 21, 2009, Defendant Neubarth discontinued Plaintiff's Tylenol # 3 prescription and instead prescribed an antiseizure medication, Gabapentin. (Id. at 24-26.) During this period, though other treating physicians often reordered the Tylenol #3 medication, on each of these occasions Defendant Neubarth discontinued the medication and reordered the Gabapentin. (Id.) Plaintiff contends that Defendants Kelso, Doe # 1, Cate, McGuinness, Clark I, Adams, R. Lopez, and Neubarth implemented policies for the purposes of conducting experiments on prisoners regarding the effects of Gabapentin following the

5

discontinuing of other prescribed pain medications such as Plaintiff's Tylenol #3 medication.[2] (Id. at 26.)

In addition, though Plaintiff was apparently seen by Defendant McGuinness for his back problems, McGuinness failed to provide to provide Plaintiff with adequate care medical care. (Doc. 23 at 30.) Also, during this period Defendant Thomas repeatedly failed to ensure that Plaintiff either received his medication or received all of the prescribed dosages of his pain medications for his back. (Id. at 25, 28.)

Finally, Plaintiff generally alleges that prison budget constraints CDCR administrators to develop specific policies to encourage medical providers to reflect deliberate indifference toward the serious medical needs of prisoners. (Id. at 13-15.) These policies were perpetuated by a CDCR system wide "code of silence," designed to encourage violations of prisoner's rights to be inaccurately reported or not reported at all. (Id.)

### III. DISCUSSION

#### A. Plaintiff's references to Plata

Plaintiff contend that he is a member of the Plata class action and seeks enforcement of its settlement terms. (Doc. 23 at 23.) Plaintiff may not pursue a claim in this action based on the alleged failure of CDCR officials to comply with the Plata settlement agreement. Remedial orders issued in the Plata case do not provide Plaintiff with an independent cause of action under section 1983 because the orders do not have the effect of creating or expanding Plaintiff's constitutional rights. Cagle v. Sutherland, 334 F.3d 980, 986–87 (9th Cir. 2003) (consent decrees often go beyond constitutional minimum requirements, and do not create or expand rights); Green v. McKaskle, 788 F.2d 1116, 1123 (5th Cir. 1986) (remedial decrees remedy constitutional violations but do not create or enlarge constitutional rights). Accordingly, the Court analyzes Plaintiff's claims under the requisite constitutional standards without reference to Plata.

---

[2]Related to the denial of his pain medications for his back condition, Plaintiff also alleges that Defendant Doe # 1, Woodford, Cate, Kelso, Adams and Lopez issued orders or directives to Defendant McGuinness and Clark I, to reduce pain relief medication in all back and neck injury related cases. (Doc. 23 at 30.)

6

**B.     Rule 18(a) and Plaintiff's unrelated claims**

The Court's screening order of February 19, 2010 granting Plaintiff leave to amend, specifically advised Plaintiff that he may not add unrelated claims involving different defendants to any amended complaint.  Nevertheless, in his First Amended Complaint, Plaintiff has improperly joined claims he asserts against some defendants with unrelated claims he asserts against other defendants.  FRCP Rule 20(a)(2) governs permissive joinder of defendants and pertinently provides:

> (2) Defendants. Persons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Id.  FRCP Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim ... may join, as independent or alternative claims, as many claims as it has against an opposing party."  While joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues." Zhu v. Countrywide Realty Co., Inc., 160 F.Supp.2d 1210, 1225 (D.Kan. 2001) (citation omitted).  The Court of Appeals for the Seventh Circuit held in George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007), that under "the controlling principle" in Fed.R.Civ.P. Rule 18(a), "[u]nrelated claims against different defendants belong in different suits." George, 507 F.3d at 607.

Similar to the allegations he raised in his original complaint, Plaintiff's First Amended Complaint alleges Defendants Veronica, Reed, Jackson, Romero, Florez, Doe # 2, and Clark II were deliberate indifferent to his medical needs in denying his pain medications following his "functional septoplasy" surgery in 2007.  However, Plaintiff's First Amended Complaint now additionally raises factually unrelated allegations naming Defendants Neubarth, McGuinness, Clark I, and Thomas for their failing to provide him with medications related to the treatment of his back beginning in 2009.  Related to his back claim, Plaintiff also alleges that Defendants Kelso, Doe # 1, Cate, McGuinness, Clark I, Adams, R. Lopez, and Neubarth implemented policies for the purposes of conducing experiments on prisoners regarding the effects of

Gabapentin after discontinuing opiate medications like those prescribed for Plaintiff's back condition. Simply put, the fact that all of these claims (both the surgery and back related claims), arise out of Plaintiff's medical treatment does not make them related and Plaintiff newly raised claims regarding his back treatment cannot be properly joined in the instant suit. Accordingly, Plaintiff's claims regarding the treatment of his back against Defendant Doe # 1, and Defendants Thomas, Neubarth, McGuinness, Cate, Adams, R. Lopez, Clark I, and Kelso should be dismissed from the action without prejudice to Plaintiff raising his back related claim in a separate lawsuit.[3]

### C. Eighth Amendment Protections

The Eighth Amendment provides a prohibition against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The government has an obligation to provide those they incarcerate with adequate medical care and will be subject to liability for failure to do so. Estelle v. Gamble, 429 U.S. 97, 102 (1976). "Although accidental or inadvertent failure to provide adequate medical care to a prisoner [does] not violate the Eighth Amendment, 'deliberate indifference to serious medical needs of prisoners'" does, because it constitutes "the unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 31-32 (1993) (quoting Estelle, 429 U.S. at 104); see also Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) ("While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice."). In order to establish an Eighth Amendment violation, a plaintiff must first "objectively show that he was deprived of something sufficiently serious[]" and then subjectively show "the deprivation occurred with deliberate indifference to the inmate's health or safety." Foster v. Runnels, 554 F.3d 807, 812 (9th Cir. 2009) (internal quotation marks and

---

[3] In addition, this Court's "pendant jurisdiction may be exercised when federal and state claims have a 'common nucleus of operative fact' and would 'ordinarily be expected to [be tried] all in one judicial proceeding." Osborn v. Haley, 549 U.S. 225, 245 (2007) (quoting Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); see also 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). Thus, because Plaintiff's state law claims regarding the denial of medications for his back, do not share a common nucleus of facts with his cognizable federal "deliberate indifference" claims regarding the denial of pain medication following his surgery, the court will not extend its pendant jurisdiction to Plaintiff's claims of negligence and malpractice regarding the treatment of his back condition.

8

citations omitted); Lopez v. Smith, 203 F.3d 1122, 1132-33 (9th Cir. 2000) (Eighth Amendment claim must meet both objective and subjective requirement).

### 1. Defendants Macalvaine, Florez, Reed, Thomas, and Clark II denial of medications for his eye disease.

#### a. Serious Medical Need

In order to bring a cause of action under the Eighth Amendment based upon inadequate medical care, the plaintiff must first show he is suffering from "a serious medical need by demonstrating that failure to treat [their] condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) overruled by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (quoting Estelle, 429 U.S. at 104); accord Jett v. Penner, 439 F.3d 1091, 1096 (2006); Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002). Indications of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." McGuckin, 974 F.2d at 1059-60 (citing Wood, 900 F.2d at 1337-41 (9th Cir. 1990)).

Plaintiff's alleges that he suffered from herpes simplex keratitis, a disease affecting his eyes which left untreated, could lead to blindness. In addition he claims that he experienced reoccurring symptoms due to the Defendants failures in providing his medications and for their failures in scheduling follow up appointments. Additionally, Plaintiff alleges that previous medical providers had found that medication to treat the disease was appropriate. However, Plaintiff's allegations fail to provide any detail regarding the frequency with which he was denied this medication, for example it is unclear as to whether Plaintiff was either occasionally deprived one of the four daily doses or he was without any medication for more extended periods such as days or weeks. In addition, Plaintiff fails to provide specific allegations that he suffered any harm as a result of the denied medication other than the "flare-ups" of the disease which apparently diminished with proper treatment. (Doc. 23 at 16.) Thus Plaintiff's allegations regarding the seriousness of his medical need are both vague and conclusory and remain

1  insufficient to state a claim under § 1983.  See Ivey, 673 F.2d, 268.

### b. Deliberate Indifference

Even presuming Plaintiff was successful in establishing the existence of a serious medical need, he must then prove prison officials exhibited deliberate indifference in responding to that need. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Jett, 439 F.3d at 1096. "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). Although the requirement is less stringent in regard to medical care, "because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns," Holliday v. Naku, 2009 U.S. Dist. LEXIS 55757, at *12 (E.D. Cal. June 26, 2009) (citing McGuckin, 974 F.2d at 1060), deliberate indifference is not met through a showing of medical malpractice and requires "more than mere negligence or isolated occurrences of neglect." Wood, 900 F.2d 1334; see also Toguchi, 391 F.3d at 1060; Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (mere medical malpractice insufficient to constitute Eighth Amendment violation); Hutchinson v. U.S., 838 F.2d 390, 394 (9th Cir. 1988).

Deliberate indifference may occur "when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Jett, 439 F.3d at 1096 (internal quotation marks and citations omitted). In order to establish deliberate indifference, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id.; McGuckin, 974 F.2d at 1060. In other words, the defendant must purposefully ignore or fail to respond to the plaintiff's pain or medical needs. McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir.1992). Thus, neither an inadvertent failure to provide adequate medical care, nor mere negligence or medical malpractice, nor a mere delay in medical care (without more), nor a difference of opinion over proper medical treatment, is sufficient to violate the Eighth Amendment. See Estelle, 429 U.S. at 105-06; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Commissioners, 766 F.2d 404, 407 (9th Cir. 1984).

Here, Plaintiff alleges facts that as a result of inadequate training and supervision,

Defendants Macalvaine, Florez, Reed, Thomas and Clark II, ignored existing medical orders by failing to provide Plaintiff with his prescribed medicine, which, according to Plaintiff was to be administered four times daily. However, rather than support the Defendants' deliberate indifference, Plaintiff's factual allegations suggest only that Defendants' conduct was the result of inadvertence, due to a lack of training or supervision. Moreover, Plaintiff pleads no facts suggesting that these providers actions were either purposeful or intentional. Instead the allegations against these individuals are vague, conclusory, and lack sufficient particularity to put each individual on notice of any claims against them. Accordingly, Plaintiff fails to state a cognizable claim of deliberate indifference as to Defendants Macalvaine, Florez, Reed, Thomas and Clark II for the denial of his medication for treatment of the eye disease.

**2. Denial of Plaintiff's medication following his off-site surgery**

As outlined above, Plaintiff alleges following his off-site surgery for his deviated septum, Defendants Veronica, Reed, Jackson, Romero, Florez, Doe # 2, and Clark II, on various multiple occasions failed to provide him with his prescribed pain medication. The Court addresses Plaintiff's allegations in turn below.

**a. Defendants Veronica, Reed, and Florez**

Applying the previously discussed standards above to the facts at hand, Plaintiff appears to state a cognizable claim under the Eight Amendment against Defendant Veronica, Reed, and Florez. As Plaintiff's alleges, his treating doctors prescribed Vicodin for the management of his pain following surgery, along with instructions that if the medication prescribed was insufficient that Plaintiff should notify his doctor. Plaintiff's allegations demonstrate that following his return to the prison after surgery, he was facing a serious medical need.

In addition, Plaintiff's allegations support that in each incident in which he was denied the pain medication by these Defendants, each one of the defendants possessed sufficient authority to ensure that Plaintiff received his medications as all three were employed by CSP-Corcoran either as a registered nurse or as licensed vocational nurse. Further, Plaintiff alleges that Defendant Florez's actions not only resulted in an additional four hour delay in receiving the medication, but that Plaintiff also informed Florez he was suffering from chest pains and was

11

coughing up blood.  However, Florez failed to respond or summon medical attention of any kind.  For pleading purposes, the Court assumes the truth of the factual allegations.  Plaintiff has stated cognizable Eight Amendment claims against Defendants Veronica, Reed, and Florez.

### b. **Defendants Jackson and Romero**

As to Defendants Jackson and Romero, however, the Court finds that Plaintiff's allegations fail to state a cognizable Eighth Amendment claim.  Defendants Jackson and Romero were correctional officers in Plaintiff's housing unit and Plaintiff asked both officers to summon medical staff because he was in pain.  As Plaintiff's original complaint stated, Romero later refused Plaintiff's request, because he had already informed medical staff about Plaintiff's condition and medical staff had made the decision not to provide further treatment. (Doc. 1 at 7.)  In addition, upon hearing Plaintiff's request, Jackson stated the issue was "a medical issue, not a custody issue." (Id. at 7.)  As noted in the Court previous screening, both officer's responses suggest that they relied on the medical staff's diagnosis of Plaintiff's medical condition.  Plaintiff has failed to allege sufficient facts to suggest that either Jackson or Romero were aware the medical staff actions were wrong, or that their failure take action would result in Plaintiff suffering unnecessary pain.  Here again, Plaintiff has at most alleged that Jackson and Romero were negligent, which is not sufficient to support a claim under section 1983.  Accordingly, Plaintiff fails to state a cognizable claim of deliberate indifference as to Defendants Jackson and Romero.

### c. **Doe # 2, and Clark II**

Both of Plaintiff's claims as to Defendants Doe # 2 and Clark II involve the denial of his pain medication, following his return from his post-op appointment on September 19, 2007.  According to his allegations, Plaintiff received a dose of his medication at 6:30 a.m., and, according to the treating doctors instructions was to receive an additional dose, six hours later.  However, when Plaintiff returned to the ACH at approximately 2 p.m., Defendant Doe # 2, did not provide Plaintiff with his medication, and Plaintiff did not receive this medication until approximately 4:30 p.m., a delay of approximately 2 and one half hours.  In addition, Plaintiff alleges that Defendant Clark II became aware of Plaintiff's return from his appointment at 2:30

12

p.m. and that Plaintiff was requesting his medication, however, Defendant Clark II additionally failed to take steps to ensure Plaintiff received his medication.

Plaintiff's claim as to Defendants Doe # 2 and Clark II regarding an approximate two and half hour delay in receiving his medications six days after his surgical operation, at most constitutes an isolated occurrence of neglect, and does not rise to the level of deliberate indifference. See Frost v. Aqnos, 152 F.3d 1124, 1130 (9th Cir. 1998) (negligent delays in administering pain medication do not violate the constitution); Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990) (mere delay insufficient to allege Eighth Amendment claim); Shapley v. Nevada Bd. of State Prison Commissioners, 766 F.2d 404, 407 (9th Cir. 1985) (same).

However, even assuming the existence of a serious medical need, Plaintiff's allegations do not support a claim that Defendant Doe #2 intentionally or purposely denied Plaintiff his pain medications. In his original complaint, Plaintiff indicates that Defendant Doe #2, or the ACH nurse that saw Plaintiff directly after his return from his appointment, specifically instructed Plaintiff that the yard nurse would provide Plaintiff his Vicodin. (Doc. 1 at 6.) This allegation suggests that rather then purposefully denying Plaintiff his pain medication, Doe #2, was instructing Plaintiff where he could and would obtain the medication. Thus, Plaintiff's allegations fail to demonstrate a purposeful action regarding any deliberate indifference on the part of Doe #2. Further, Plaintiff's allegations regarding Clark II's knowledge of Plaintiff's return and need for medication, fail to explain how Clark II would have been aware of these facts. Without more, Plaintiff's allegations in this regard are conclusory and unsupported. Accordingly, Plaintiff fails to state a cognizable claim of deliberate indifference as to Defendants Doe #2 or Clark II for the denial of his pain medications.

### d. Defendant Jones and Doe #'s 3 and 4.

Plaintiff's original complaint alleged that Jones had processed an administrative appeal regarding the denial of his pain medications, but denied Plaintiff's request to have the appeal classified as an emergency appeal. The Court previously screening order noted that Plaintiff's allegations had not demonstrated that Jones acted with deliberate indifference as there were simply no allegations that Jones had actual knowledge that the failure to process the appeal

13

would result in Plaintiff suffering unnecessary pain. As the Court noted, Jones' conduct amounted to, at most, negligence, which was not sufficient to support Plaintiff's Eight Amendment claim.

Rather than addressing these deficiencies, Plaintiff's amended complaint provides even less factual support for his claim. Though Plaintiff alleges that Defendant Jones was an appeal coordinator at CSP-Corcoran and responsible for processing emergency appeals, Plaintiff amended complaint fails to assert that he requested Jones to process any of his appeals as an "emergency" appeal and instead Plaintiff merely asserts that Jones made decisions which "displayed deliberate indifference" to Plaintiff's medical needs. (Doc. 23 at 31.) Plaintiff's allegations provided in his amended complaint are clearly insufficient to state a cognizable claim as to Defendant Jones.

Similarly, Plaintiff's amended complaint identifies Doe #'s 3 and 4 as prison pharmacists responsible for filling medical prescriptions at CSP-Corcoran, however the body of Plaintiff's complaint fails to alleges any misconduct on the part of Doe #'s 3 and 4.[4] The Court order of February 19, 2010 specifically advised Plaintiff that "all causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." (Doc. 15 at 13.) Because Plaintiff has failed to reallege any of his any the facts that he alleged in his original complaint as to Doe #'s 3 and 4, Plaintiff claims as to these defendants are deemed waived.

Because, Plaintiff has failed to state a cognizable claim, let alone any claim as to Defendant Jones or Doe #'s 3 and 4, Plaintiff's claims as to these defendants should be dismissed from this action.

### e.  Supervisory Defendants

Plaintiff additionally alleges that the actions of all of medical providers which resulted in the denial of his pain medication following his surgery, were set in motion by policies supported by Defendants McGuinness, Clark I, and Macalvaine. (Doc. 23 at 27.) Additionally, Plaintiff appears to contend that all of the Defendants who hold supervisory positions were aware of a

---

[4] Plaintiff also states that Defendants Doe #'s 3 and 4 were responsible for implementing policies pursuant to Plata, (Doc. 23 at 23.), which as discussed above, does not state a cognizable federal claim.

14

over-arching policy designed to promote deliberate indifference towards the medical needs of all prisoners at CSP-Corcoran.  (Id. at 13-15.)

When the named defendant holds a supervisor position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir.1978).  To state a claim for relief under § 1983 for supervisory liability, plaintiff must allege some facts indicating that the defendant either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989).

To begin with, regarding Plaintiff's more generalized allegations of a systemwide policy, Plaintiff devotes a significant portion of his amended complaint to describe that CDCR administrators developed specific policies which encouraged medical providers to act with deliberate indifference to serious medical needs of prisoners and that a systemwide policy of a "code of silence" was perpetuated by CDCR.  However, Plaintiff does not explain which of the Defendants, if any were responsible for implementing any such policies.  Instead, he alleges more generally that all of the Defendants were aware of these policies.  Such vague and conclusory allegations are insufficient to state a claim against the alleged supervising defendants, which includes: (1)  Defendants Mathew Cate and Jeanne Woodford, Director and former Director of the CDCR; (2)  Doe #1, the assistant deputy director of the office of Health Care Services of the CDCR; (3)  Clark Kelso and John Sillen, Health Care Receiver and former Receiver of the CDCR Health Care System; (4)  R. Lopez and Darrel Adams, Warden and former Warden of CSP-Corcoran, Edgar Clark; (5)  ("Clark I") and William McGuinness, the Chief Medical Officer ("CMO") and former CMO of CSP Corcoran; (6)  S. Macalvaine, a supervising

registered nurse at CSP-Corcoran; and (7) J. Neubarth, a medical doctor at CSP-Corcoran.[5]

As to Plaintiff's somewhat more specific claims of failed supervision, Plaintiff alleges, again in conclusory fashion, that the denial of his pain medication following his surgery, were actions which were supported by policies that Defendants McGuinness, Clark I, and Macalvaine "had" or continue to "have" in place. (Doc. 23 at 27.) As explained above, Rule 8(a) of the Federal Rules of Civil Procedure requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Plaintiff's allegation against Defendants McGuinness, Clark I, and Macalvaine regarding potential policies is nothing more than a single yet often repeated, conclusory sentence. While a claim for relief under section 1983 for supervisory liability can be based on the promulgation or implementation of a policy, Plaintiff's allegation fails to comply with Rule 8. Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor, 880 F.2d at 1045. For example, Plaintiff fails to state which of these Defendants "implemented" or "promulgated" the alleged policies or for that matter any personal involvement on the part of these Defendants that suggests that they had knowledge of the violations but failed to act to prevent them. Hansen, 885 F.2d at 646. Plaintiff asserts only conclusions that Defendants McGuinness, Clark I, and Macalvaine participated in the alleged deprivation of Plaintiff's constitutional rights due to the existence of the alleged policies, which is insufficient to state a claim. Iqbal, 129 S.Ct. at 1949.

**D.   Retaliation**

"Within the prison context, a viable claim of First Amendment retaliation entails five

---

[5] Plaintiff also asserts that Defendants Sillen, Kelso, Woodford, Cate, Doe #1, Adams, McGuinness, Clark I, and Lopez have failed to provide a constitutionally required level of care to all inmates. (Doc. 23 at 32.) The Court notes that Plaintiff's allegations are insufficient to state a claim and that Plaintiff's purported effort to represent all inmates will be disregarded. A plaintiff proceeding pro se may bring his own claims to court, but may not represent the claims of others. Fymbo v. State Farm Fire & Casualty Co., 213 F.3d 1320, 1321 (2000); Johns v. County of San Diego, 114 F.3d 874, 876 (9th Cir. 1997); C.E. Pope Equity Trust v. United States, 818 F.2d 696, 697 (9th Cir.1987).

basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal ." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir.2005).

Plaintiff alleges that Defendants Reed and Florez acts denying his pain medication following his off-site surgery, were done in retaliation for his submitting complaints which describe these defendants misconduct as well as their incompetence. (Doc. 23 at 29.) While Defendants denial of pain medication is certainly adverse to Plaintiff, Plaintiff fails to allege any facts, aside from the above conclusory allegations, connecting the denial of his pain medications and any grievances filed against Defendants Reed or Florez. Retaliation is not established simply by showing adverse activity by the defendant after the exercise of protected speech; rather, Plaintiff must show a nexus between the two. See Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000). In the his complaint, Plaintiff fails to allege that he filed any grievances or complaints against Reed or Florez before the time he alleges that they denied him pain medications. Once again, Plaintiff allegations, fail to raise a cognizable claim of retaliation against Defendants Reed and Florez.

### E.  State Law Claims

Plaintiff alleges medical malpractice and violations of the California Constitution. Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir.1 997). Because the Court has found cognizable federal claims as to Defendants Veronica, Reed and Florez, the Court recommends that supplemental jurisdiction be extended only to those additional state law claims brought as to Veronica, Reed and Florez.

"The elements of a medical malpractice claim are (1) the duty of the professional to use

17

such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and resulting injury; and (4) actual loss or damage resulting from the professional's negligence." Avivi v. Centro Medico Urgente Medical Center, 159 Cal.App.4th 463, 468, n. 2, 71 Cal.Rptr.3d 707 (Ct.App.2008) (internal quotations and citation omitted); Johnson v. Superior Court, 143 Cal.App.4th 297, 305, 49 Cal.Rptr.3d 52 (2006).  In the light of the above discussion of Plaintiff's factual allegations related to Defendants Veronica, Reed, and Florez, Plaintiff appears to allege cognizable claims for medical malpractice under state law against these defendants.

As to his state constitution claim, Article I, Section 17 of the California Constitution states that "[c]ruel or unusual punishment may not be inflicted or excessive fines imposed." Cal. Const. Art. 1, § 17.  "Punishment" under California law has the same meaning than would apply under the Eighth Amendment.  In re Alva, 33 Cal.4th 254, 291, 14 Cal.Rptr.3d 811, 92 P.3d 311 (2004); see e.g., Ochoa v. Superior Court, 39 Cal.3d 159, 173, 216 Cal.Rptr. 661, 703 P.2d 1 (1985) (stating in dicta in a medical care claim that both the Eighth Amendment of the Federal Constitution and Article I, Section 17 of the California Constitution prohibit the infliction of cruel and unusual punishment).

However, under state law there exists no private cause of action for damages under the state cruel and unusual punishment clause. Giraldo v. California Dept. of Corrections and Rehabilitation, 168 Cal.App.4th 231, 253-56, 85 Cal.Rptr.3d 371 (2008) ("there is no basis to recognize a claim for damages under article 1, section 17 of the California Constitution"). Nevertheless, because in addition to compensatory damages, Plaintiff seeks injunctive relief for Defendants violations, the Court finds Plaintiff has stated cognizable state law claims under the California Constitution "cruel and unusual punishment" provision.[6]

---

[6] Additionally, regarding Plaintiff's state law claims as to Defendants Veronica, Reed, and Florez, Plaintiff's amended complaint fails to allege sufficient facts to show that he has complied with the requirements of the California Tort Claim Act ("CTCA").  To state a tort claim against a public employee, a plaintiff must allege compliance with the Tort Claims Act. Cal. Gov't Code § 950.6; State v. Superior Court of Kings County (Bodde), 90 P.3d 116, 119 (Cal. 2004).  However, Plaintiff's original complaint alleged facts reflecting his compliance with the CTCA, (Doc. 1 at p. 10.), so that the Court finds Plaintiff's state law claims against Defendants Veronica, Reed, and

## IV. CONCLUSION

In accordance with the above, it is **HEREBY RECOMMENDED** that:

1. Plaintiff's Eighth Amendment claim against Defendants Cate, Kelso, Adams, Lopez, McGuinness, Clark I, Neubarth, Thomas, and Doe #'s 1, 3 and 4, for deliberate indifference for the treatment of his back be **DISMISSED** without prejudice as improperly joined;

2. Plaintiff's Eighth Amendment claim against Defendants Florez, Macalvaine, Reed, Thomas, Clark II for deliberate indifference for the treatment of his eye related problem be **DISMISSED** for failure to state a claim;

3. Plaintiff's Eighth Amendment claim against Defendants Clark II, Jackson, Romero, and Doe #2, for deliberate indifference for the denial of his pain medication following surgery be **DISMISSED** for failure to state a claim;

4. Plaintiff's claims which allege supervisory liability as to Defendants Cate, Woodford, Kelso, Sillen, Adams, Lopez, McGuinness, Clark I, Macalvaine, Neubarth, and Doe #1 be **DISMISSED** for failure to state a claim;

5. Plaintiff's First Amendment claims alleging retaliation as to Defendants Reed and Florez be **DISMISSED** for failure to state a claim;

6. Plaintiff's claims against Defendants Jones and Doe #'s 3 & 4 be **DISMISSED** for failure to state claim.

///
///
///
///
///
///
///

Florez are cognizable and may proceed in the action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **December 22, 2011**                                         /s/ Jennifer L. Thurston
                                                                                            UNITED STATES MAGISTRATE JUDGE