IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW R. LOPEZ,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>FLOREZ, et al,<br><br>　　　　Defendants. | Case No. 1:08-cv-01975-LJO-JLT  (PC)<br><br>**FINDINGS & RECOMMENDATION THAT DEFENDANTS' MOTION TO DISMISS BE DENIED**<br><br>(Doc. 53) |

In this case, Plaintiff contends that he was denied pain medication after undergoing a painful surgery for a deviated septum. He claims this deprivation was a denial of his rights under the Eighth Amendment.

Before the Court is the motion to dismiss filed by Defendants. (Doc. 53) Defendants' motion asserts that the matter should be dismissed for several reasons. First, Defendants argue that the matter must be dismissed as to Flores because the alleged wrongdoing by this Defendant occurred on September 14, 2007 so the grievance submitted on September 13, 2007 could not address this action and the one submitted on September 19, 2007 did not name Flores. Second, Defendants argue that Reed's failure to provide pain medication despite being aware of Plaintiff's recent painful surgery, is not sufficient to demonstrate deliberate indifference. Third, because the federal claims should be dismissed, the state medical malpractice claims should as well. For the reasons set forth below, the Court recommends Defendants' motion to dismiss be **DENIED**.

## I. Procedural History

Plaintiff initiated this litigation on September 29, 2008. (Doc. 1) The Court screened the complaints several times and finally authorized service on Defendants Veronica,[1] Reed and Florez on December 29, 2011. (Doc. 29) All other claims were dismissed. (Docs. 28, 32)

Defendants Reed and Florez filed their motion to dismiss on May 21, 2012. (Doc. 53) Plaintiff opposed the motion on June 14, 2012 (Doc. 56) to which Defendants replied on June 21, 2012 (Doc. 58) Pursuant to leave granted by the Court, Plaintiff filed his supplemental opposition to the motion on August 16, 2012. (Doc. 63) Defendants filed their supplemental reply on August 30, 2012.

## II. Factual History

On September 13, 2007, Plaintiff underwent surgery at a private hospital, for a deviated septum. (Doc. 23 at 17) When Plaintiff was returned to California State Prison, Corcoran, later the same day, his nose was packed "with serapack and gelfoam soaked thrombin followed by cotton, and [there was] applied a drip pad." Id. Planitiff's post-surgical condition was apparent.

In addition, Plaintiff was given post-surgical orders to present to the prison. (Doc. 23 at 17) The orders required Plaintiff be provided Vicodin for pain. Id. Plaintiff was advised by the recovery nurse at the private hospital that he needed to take the first dose of Vicodin before the anesthesia fully dissipated due to the severe pain he would experience. Id.

When Plaintiff arrived at Corcoran, he presented the surgical orders to medical staff and requested the pain medication. (Doc. 23 at 17) By this time, he was in severe pain but was not given the Vicodin. Id. Plaintiff was taken to his cell. Id. at 19. Later, at around 5:00 p.m., Defendant Reed, a licensed vocational nurse, passed by his cell while completing her medication distribution to the inmates. Id. Plaintiff told Reed that he was in severe pain and requested pain medication. Id. Reed told Plaintiff that he did not have any medication for him. Id. Plaintiff told Reed that he needed medication and needed to see a registered nurse. Id. However, Reed did not return with medication for Plaintiff and he was not seen by a nurse. Id.

---

[1] Defendant Veronica has not been located for service.

1    Later that evening, around 8:00 p.m., Reed returned to Plaintiff's cell but, once again, told

2    him that she did not have pain medication for him. (Doc. 23 at 19)  Given this, Plaintiff submitted

3    to Reed a 602 grievance (number 07-4534).  Id.  This form read,

4    On 9-13-07 I had nasal septoplasty surgery, & Dr. Suesberry prescribed "Vicodan"
     for pain beginning "9 13 07."  I am in serious & severe pain.  At about 1650 hours
5    I advised the nurse of the above, but have not been given my pain meds.  I have
     been up since 0300 and will not be able to sleep with this pain.  This is
6    unnecessary & gratuitous suffering.  It is delaying an denying prescribed
     treatment, and I affecting my daily activities.
7

8    (Doc. 56 at 24.   Plaintiff stated on the form, "I want my prescribed medications, beginning today.

9    I reserve the right to seek damages.  I also want the name of the supervising nurse on duty

10   between 3rd and 1st watch on 9-13-07."  Id.  Eventually, this grievance was fully exhausted.  Id. at

11   29.

12   Reed did not return to Plaintiff's cell that day and he was not provided any pain

13   medication on September 13, 2007, despite that another medication distribution occurred around

14   midnight. (Doc. 23 at 19-20)

15   Around 8:00 a.m. on September 14, 2007, Plaintiff stopped Defendant Florez at his cell.

16   Id. at 21.  Plaintiff told Florez about his surgery and provided his surgical orders.  Id.  Plaintiff

17   told Florez that he had not had any pain medication, was coughing up blood clots and was

18   nauseated, dizzy and light-headed.  Id.  By this time, the bandages on Plaintiff's face were soaked

19   in blood and his eyes were blackened from the surgery and they were red from crying due to the

20   pain.  Id.  Plaintiff pleaded with Florez to get him medical attention.  Id.  Despite this, Florez

21   failed to provide medication or medical attention at that time, though he returned four-and-a-half

22   hours later.  Id.  Plaintiff finally received pain medication at around 12:30 p.m. on September 14,

23   2007.  Id. at 19-20.

24   On September 19, 2012, Plaintiff was taken off-site for a follow-up treatment.  (Doc. 23 at

25   22)  On that date, he received his pain medication at 6:30 a.m. and was due to receive his second

26   dose at 12:30 p.m.  Id.  When he arrived back at Corcoran at 2:00 p.m., he reported that he had

27   not received his second dose of medication and was in severe pain.  Id.  Nevertheless, he was not

28   provided the medication until 4:00 p.m.  (Doc. 56 at 35)  As a result, Plaintiff filed a grievance,

3

1  number 07-4558, related to these events.  This grievance was fully exhausted.  Id. at 39.

**III.    Motion to dismiss under the PLRA for failure to exhaust administrative remedies**

The Prison Litigation Reform Act ("PLRA") provides, "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Therefore, prisoners are required to exhaust all available administrative remedies prior to filing suit.  Jones v. Bock, 549 U.S. 199, 211 (2007).  The Supreme Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  Exhaustion of remedies is required, regardless of the relief sought by the prisoner, as long as the administrative process can provide some sort of relief on the prisoner's complaint.  Booth v. Churner, 532 U.S. 731, 741 (2001).

The California Department of Corrections and Rehabilitation ("CDCR") established an administrative system for prisoners' grievances.  See Cal.Code Regs., tit. 15 § 3084, et seq.[2]  To properly exhaust the administrative remedies, a prisoner must comply with the deadlines and other applicable procedural rules.  Woodford v. Ngo, 548 U.S. 81, 93 (2006).

The exhaustion requirement of § 1997e(a) does not impose a pleading requirement, but rather is an affirmative defense under which defendants have the burden of proving the plaintiff failed to exhaust the available administrative remedies before filing a complaint in the District Court.  Jones, supra, 549 U.S. at 216.  A motion raising a prisoner's failure to exhaust the administrative remedies is properly asserted by way of an unenumerated motion under Fed.R.Civ.P 12(b).  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003); Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1998) (per curium).  In determining whether a case should be dismissed for failure to exhaust the administrative remedies, "the court may look beyond the pleadings and decide disputed issues of fact" in a

---

[2] These regulations were amended effective January 2011.  At issue here, are the regulations in place in 2007.

procedure that is "closely analogous to summary judgment." Id. at 1119–20. When the court concludes the prisoner has not exhausted all of his available administrative remedies, "the proper remedy is dismissal without prejudice." Id.

"[I]f prison regulations do not prescribe any particular content for inmate grievances, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming.'" Johnson v. Testman, 380 F.3d 691, 697 (2nd Cir. 2004) (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir.2002)). "A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).

The CDCR'S grievance process is initiated by submitting a CDC Form 602. Cal.Code Regs., tit. 15 § 3084.2(a). Four levels of appeal are involved, including the informal level, first formal level, second formal level, and third formal level (the "Director's Level"). Id. at § 3084.5. Appeals must be submitted within fifteen working days of the event being appealed, and the process is initiated by submission of the appeal to the informal level, or in some circumstances, the first formal level. Id. at §§ 3084.5, 3084.6(c).

Under the CDCR regulations, an inmate is required to "describe the problem and the action requested" in his appeal. Cal. Code Regs. tit. 15, § 3084.2(a). Accordingly, an inmate appeal satisfies California's regulations "if it alerts the prison to the nature of the wrong for which redress is sought." Griffin, 557 F.3d at 1120; McCollum v. California Dept. of Corrections and Rehabilitation, 647 F.3d 870, 876 (9th Cir. 2011). In Womack v. Bakewell, 2010 WL 3521926 at 1 (E.D. Cal. Sept. 8, 2010), this Court held, "California regulations do not require an inmate to specifically identify a prison official in a grievance. Therefore a California inmate need not name a particular individual during the grievance process in order to name that person as a defendant

1  and meet the PLRA's exhaustion requirement by the time he files suit. See <u>Jones v. Bock</u>, 549

2  U.S. 199, 218-219 (2007); <u>Butler v. Adams</u>, 397 F.3d 1181, 1183 (9th Cir. 2005)."[3]

### A.  Analysis

In this motion, Defendant Florez argues that the matter must be dismissed as to him because the grievance filed on September 13, 2007 was *before* Plaintiff alleges Florez committed any wrongdoing and the next grievance submitted on September 19, 2007, did not provide notice of any wrongdoing on his part. Though facially appealing, the Court is unconvinced.

First, it appears that the denial of medication from September 13, 2007 to when he received his medication on September 14, 2007, was one, ongoing event. It would be unfairly burdensome and onerous to require Plaintiff to submit a grievance every time his request for medication was refused. Likewise, it would thwart the purposes of the PLRA to require Plaintiff to wait until the situation resolved—and, hence, all acts of wrongdoing been completed--before he could safely submit his grievance without risking a claim that he had not exhausted his administrative remedies as to some acts. Indeed, the purpose of administrative exhaustion is to resolve the problem so that the matter does not ripen into litigation.[4] See <u>Jones</u>, 549 U.S. at 218.

Notably, neither the PLRA nor the CDCR procedures require a plaintiff to repeatedly exhaust his claim of ongoing inadequate medical care. This issue was addressed squarely in <u>Gomez v. Winslow</u>, 177 F.Supp.2d 977, 978-82 (N.D.Cal. 2001), in which the court rejected the argument that the plaintiff had failed to exhaust his three distinct claims of inadequate medical care. Instead, the court determined that all three of plaintiff's claims were simply aspects of the same claim of inadequate medical treatment which plaintiff *had* notified corrections officials about in his grievance. Id. The same issue was addressed by this Court in <u>Lewis v. Naku</u>, 2007 WL 3046013 at *5 (E.D. Cal. Oct. 18, 2007), where the Court held, "Prisoners are not required to

---

[3] Thus, the Court declines to follow <u>Ornelas v. Giurbino</u>, 358 F.Supp.2d 955, 961 (S.D. Cal. 2005) and <u>Nichols v. Logan</u>, 3555 F.Supp.2d 1155, 1162-1164 (S.D. Cal. 2004), cited in Defendants' supplemental reply. On this point, these cases are no longer good law given they were decided before the United States Supreme Court decided <u>Jones</u>, 549 U.S. at 218-219 and the Ninth Circuit decided <u>Butler</u>, 397 F.3d at 1183, both of which hold that an inmate *need not* name every defendant in his 602 grievance.

[4] Of course, as here, some inmates will not be satisfied short of litigation even when their grievance is granted.

file and exhaust a separate grievance each time they allegedly receive inadequate medical care for an ongoing condition."  See also Tatmon v. Hartley, 2009 WL 1748861 (E.D. Cal. June 18, 2009) ("repeated exhaustion of the same grievance is unnecessary to satisfy the exhaustion requirement.")  Thus, these authorities demonstrate that the one grievance was sufficient to alert prison officials of the situation and allowed them to address it.  Therefore, the Court recommends Florez's motion to dismiss for failure to exhaust administrative remedies be **DENIED**.[5]

**IV.    Motion to dismiss for failure to allege facts to show deliberate indifference**

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to that need with deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Where deliberate indifference relates to medical care, "[t]he requirement of deliberate indifference is less stringent ... than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns." Holliday v. Naku, 2009 U.S. Dist. LEXIS 55757, at *12, 2009 WL 1845094 (E.D. Cal. June 26, 2009), citing McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1991).  Generally, deliberate indifference to serious medical needs of prisoners may be manifested in two ways: "when prison officials deny, delay, or intentionally interfere with medical treatment, or ... by the way in which prison physicians provide medical care." Hutchinson v. United States, 838 F.2d 390, 393-394 (9th Cir.1988). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Jet v. Penner, 439 F.3d 1091, 1096 (citing McGuckin, 974 F.2d at 1060).  The needless suffering may be sufficient to demonstrate further harm. Clement v. Gomez, 298 F.3d 898, 904 (9th Cir.2002).

Here, Reed moves the Court to dismiss the complaint as to her because she argues that Plaintiff has failed to allege facts that demonstrate that she was deliberately indifferent to his serious medical condition.  Notably, Reed admits that the complaint alleges that Plaintiff showed

---

[5] Because the Court concludes that Plaintiff exhausted his administrative remedies as it relates to Florez, the Court does not decide whether Defendants are stopped from raising this issue.

7

her the discharge orders demonstrating that Plaintiff had undergone surgery just hours before. (Doc. 53-1 at 7) Though the allegation that Reed told Plaintiff that she did not have any medication for him would not alone demonstrate deliberate indifference, the complaint went further than this. (Doc. 23 at 19) Plaintiff also told Reed that he needed to see a registered nurse because of the pain he was experiencing from the surgery and so that he could obtain the medication. Id. The complaint alleges that Reed did not return with medication and, by implication, failed to obtain medical attention for Plaintiff. Id.

When Reed returned to Plaintiff's cell three hours later, she still did not have pain medication for Plaintiff. (Doc. 23 at 19) If Reed had any doubt about what Plaintiff wanted, he presented her with a grievance which described his situation in detail. (Doc. 56 at 24)

> On 9-13-07 I had nasal septoplasty surgery, & Dr. Suesberry prescribed "Vicodan" for pain beginning "9 13 07." **I am in serious & severe pain**. At about 1650 hours I advised the nurse of the above, but have not been given my pain meds. I have been up since 0300 and will not be able to sleep with this pain. This is unnecessary & gratuitous suffering. It is delaying and denying prescribed treatment, and I affecting my daily activities.

Id., emphasis added. In addition, Plaintiff stated on the form, "I want my prescribed medications . . ." Id. Despite this, Reed did not return to Plaintiff's cell that day. (Doc. 23 at 19-20)

Reed argues that this does not demonstrate a purposeful failure to respond to Plaintiff's pain. The Court disagrees. Reed was aware of Plaintiff's surgery, the order for Vicodin and the pain from which Plaintiff was suffering. The complaint alleges that despite this information, she failed to take any action to address Plaintiff's pain which caused him to suffer needlessly. This demonstrates sufficiently, that Reed acted with deliberate indifference. Therefore, the Court recommends Reed's motion to dismiss as to the federal claims and the state claims, be **DENIED**.

**V.     Findings and Recommendation**

Based on the foregoing, the Court recommends,

1.     That Defendants' motion to dismiss be **DENIED.**

These Findings and Recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within

14 days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be filed within 14 days after service of the objections. The District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). Failure to file objections within the specified time may waive the right to appeal the District Judge's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **August 30, 2012**                             **/s/ Jennifer L. Thurston**
                                                        UNITED STATES MAGISTRATE JUDGE