UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW R. LOPEZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FLOREZ, et al.,<br><br>　　　　Defendants. | Case No.: 1:08-cv-01975-LJO-JLT (PC)<br><br>FINDINGS AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE GRANTED<br>(Doc. 127)<br><br>FINDINGS AND RECOMMENDATION THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED<br>(Doc. 148) |

Plaintiff Andrew R. Lopez is a state prisoner proceeding *pro se* and *in forma pauperis* with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendants Reed and Flores provided him with inadequate medical care in violation of the Eighth Amendment and committed medical malpractice when they delayed in distributing his post-operative pain medication. *See* (Doc. 23). Before the Court are cross-motions for summary judgment filed by Plaintiff and Defendants. (Doc. 127 and 148). Having considered the arguments and evidence presented by both parties, the Court recommends that Plaintiff's motion for summary judgment be **GRANTED** and Defendants' motion for summary judgment be **DENIED**.

I.     **SUMMARY JUDGMENT STANDARD**

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsuhita Elec. Indus. Co. Ltd. v. Zenith Radio

1

Corp., 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Accordingly, summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A moving party for summary judgment bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Wool v. Tandem Computers, Inc., 818 F.2d 1422, 1436 (9th Cir. 1987). A moving party demonstrates summary judgment is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (*quoting* Fed.R.Civ.P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue of a material fact. Fed R. Civ. P. 56(e); Matsuhita, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 587. The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits. Id. at 586, n.11; Fed. R. Civ. P. 56(c). Further, the opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322.

///

///

## II. STATEMENT OF FACTS

At all times relevant to this matter, Plaintiff was housed in the segregated housing unit ("SHU") at California State Prison, Corcoran ("CSP-COR"). (Doc. 150 at 1).[1] Defendants Reed and Flores were Licensed Vocational Nurses employed by the California Department of Corrections and Rehabilitation at CSP-COR at the time Plaintiff's cause of action arose. (Doc. 150 at 2; Doc. 183 at 15). As LVN's, Defendants were not permitted to render independent medical decisions without the direction of a registered nurse or licensed physician. (Doc. 183. at 8).

On September 13, 2007, Dr. William Suesberry performed a nasal septoplasty to remove a 95% obstruction in Plaintiff's right nasal passage at Delano Regional Medical Center. (Doc. 150 at 6). Dr. Suesberry removed cartilage and bone tissue totaling "2.5 x 2.5 x 0.4 centimeters" in size. Id. at 150. He concluded the surgery by packing Plaintiff's nose with "Serapak and Gelfoam…[and] applying an outer drip pad. Id. at 7. Dr. Suesberry prescribed Viocodin ES (hydrocodone). (Doc. 150 at 12; Doc. 164 at 35). Before leaving the hospital, Plaintiff was provided Tylenol with Codeine. (Doc. 164 at 48)

Following the procedure, officials returned Plaintiff to CSP-COR's Acute Care Hospital ("ACH") at 3:52 p.m. on September 13, 2007. (Doc. 150 at 8). Around that same time, Dr. Moon completed CDCR Form 7221, entitled "Physician's orders," and prescribed Vicodin to be provided as needed, every six hours. (Doc. 150 at 8-9) ACH staff did not provide Plaintiff with any pain medication at that time. Doc. 164 at 29). An ACH registered nurse noted on Plaintiff's nursing care record form that all prescriptions had been faxed to the pharmacy, and that pain medications were to be administered prior to the onset of severe pain. (Doc. 150 at 8).[2] Plaintiff returned to his cell at approximately 4:10 p.m. (Doc. 150 at 8).

The amount of pain Plaintiff was suffering at this time is disputed. Plaintiff claims he

---

[1] The parties have filed multiple statements of facts, some of which are disputed and others of which are undisputed. (Docs. 127, 150, 164, 183). The Court has reviewed the parties' voluminous filings and synthesized the undisputed, relevant facts herein.

[2] Defendants later contradict themselves in Document 183 when Defendants indicate that this note was "not a note indicating that the [prescription] had already been faxed." *Compare* (Doc. 150 at 9) *with* (Doc. 183 at 6). In any event, the issue of whether the prescription was previously faxed while Plaintiff was at the ACH is immaterial to the central issue of whether Defendants were aware of Plaintiff's serious medical need. Thus, the Court disregards this discrepancy.

3

1  complained to the nurse of pain and showed her the doctor's order for Vicodin. (Doc. 164 at 49) The
2  medical records indicated Plaintiff's pain was rated at "2/10." (Doc. 150-4 at7)  There is no
3  explanation how this rating was obtained and Plaintiff denies rating his pain in this fashion at that
4  time. (Doc. 164 at 49)  Notably, this report was placed next to the nurse's "assessment" portion of her
5  note, rather than the "subjective" portion where Plaintiff reported on his condition. (Doc. 150-4 at7)
6  In the subjection portion, there is no indication that Plaintiff reported this level of pain though it
7  appears as though the nurse noted he said, "I feel ok, was out for procedure." Id.  The nursing note
8  entered at that time acknowledged that Plaintiff's pain would be increasing as the anesthesia began to
9  wear off. (Doc. 150 at 8)  The note indicated also that Plaintiff should begin receiving the Vicodin
10 before his pain became severe. Id.

11      Shortly thereafter, Defendant Reed performed her routine medication distribution rounds in the
12 SHU at 5:00 p.m. and at 8:00 p.m. (Doc. 164 at 30). Defendant Reed informed Plaintiff during both
13 rounds that she did not have any medication to provide Plaintiff. Id. According to Plaintiff, he advised
14 Defendant Reed at both 5:00 p.m. and 8:00 p.m. "that he was suffering from severe post-surgery pain
15 [and] showed [her] the surgeon's order for Vicodin." (Doc. 164 at 32).  The parties agree the
16 prescription was faxed to the pharmacy at 9:20 p.m. Id. at 30.

17      Plaintiff asserts that at the 8 p.m. med pass, Plaintiff provided Reed a 602 grievance form
18 requesting emergency processing in which Plaintiff reported he was suffering "severe pain" and
19 requested his medication. (Doc. 164 at 52; Doc 148-6 at 58; Doc. 23 at 19[3]) Plaintiff noted in the 602
20 that he requested to see a supervisor at the 5 p.m. med pass when Reed failed to have medication for
21 him and continued to request to see a supervisor. Id. Despite this, Plaintiff's grievance was not
22 treated as an emergency appeal and the grievance was stamped, "Emergency Processing Not
23 Warranted." Id. Despite submitting this grievance, it is undisputed Plaintiff was provided no pain
24 medication during the night of September 13, 2007. (Doc. 150 at 11) Plaintiff contends that over the
25 nighttime hours, his "condition worsened" and he began suffering "chest pains, dizziness and feeling

---

[3] Plaintiff relies upon the factual assertions made in his First Amended Complaint given it is verified. (Doc. 164 at 6 n. 2)  This is permitted. Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) ["A verified complaint may be used as an opposing affidavit under Rule 56."]

4

1   light-headed and began coughing-up blood clots." (Doc. 23 at 20)

2   Defendant Flores re-faxed Plaintiff's prescription to the pharmacy the next morning on

3   September 14, 2007, sometime around the 8:00 a.m. med pass, after he spoke with Plaintiff and

4   learned that Plaintiff had not received his medication. (Doc. 148 at 3)[4]  On September 14, 2007,

5   Defendant Flores performed his routine medication distribution rounds in the SHU at approximately

6   8:00 a.m. and at 12:00 p.m. but did not provide him pain medication at those times. Id. at 32.  Plaintiff

7   received the first dose of pain medication on September 14, 2007, at approximately 12:30 p.m. (Doc.

8   150 at 9, 11).  Neither Defendant Reed nor Defendant Flores contacted a registered nurse or a

9   physician on Plaintiff's behalf on September 13 or 14, 2007. (Doc. 183 at 11).

10  **III.    DISCUSSION**

11  Plaintiff contends that he is entitled to summary judgment on his claims because the

12  Defendants' ignored the obvious nature of his medical condition and his request for medication.  On

13  the other hand, Defendants indicate that they are entitled to summary judgment because they acted

14  within the standard of care, that the delay in the administration of pain medication cannot constitute an

15  Eighth Amendment violation and that they are entitled to qualified immunity.  These competing

16  motions for summary judgment amply demonstrate that genuine issues of material fact exist in this

17  matter, as discussed below.

18  **A.   Eighth Amendment – Inadequate Medical Care**

19  The Eighth Amendment "embodies 'broad and idealistic concepts of dignity, civilized

20  standards, humanity, and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976), *quoting* Jackson v.

21  Bishop, 404 F.2d 571, 579 (8th Cir.1976). Included in the prohibition of cruel and unusual

22  punishments is a responsibility placed upon prison officials to provide medical care to prisoners. Id. at

23  104–105.  In regard to claims arising in the context of inadequate medical care, a prisoner must point

24  to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical

25  needs." Id. at 106.  In the Ninth Circuit, a cognizable claim has two elements: "the seriousness of the

26

---

27  [4] Plaintiff contests this fact, indicating that Defendant Flores did not encounter Plaintiff until "about 8:00 a.m."
    and therefore the prescription could not have been faxed to the pharmacy at 7:44 a.m. (Doc. 165 at 33-34).  However, it is
28  irrelevant  the exact time the fax was sent given it is undisputed it was sent in the morning around 8:00 a.m.

1 prisoner's medical need and the nature of defendant's response to that need." McGuckin v. Smith, 974
2 F.2d 1050, 1059 (9th Cir.1991), *overruled on other grounds by* WMX Techs., Inc. v. Miller, 104 F.3d
3 1133, 1136 (9th Cir.1997); *see also* Jett v. Penner, 429 F.3d 1091, 1096 (9th Cir.2006).

        1.  **Serious Medical Need**

A medical need is serious "if the failure to treat the condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997). Indications that a person has a serious need for medical treatment include: the existence of an injury that a reasonable doctor or patient would find worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. McGuckin, 974 F.2d at 1059-60 (citations omitted).

The parties do not contest that Plaintiff experienced post-operative pain on September 13 and 14, 2007, but the parties contest whether the level of pain rose to the level of a serious medical need. Plaintiff indicates he began experiencing severe pain around 5:00 p.m. on September 13, 2007, at the time he first advised Defendant Reed of his need for Vicodin. (Doc. 127 at 8). As a result, he "could not eat, sleep, or concentrate…" and experienced "chest pains [and] dizziness." Id. at 9.

In response to Plaintiff's factual allegations, Defendants provide the expert testimony of Dr. B. Barnett. (Doc. 148-4) Dr. Barnett opines that after a review of the Plaintiff's medical records that "the pain relief from numbing medication injected into the nose at the time of surgery was likely still in effect at 5:00 p.m." on September 13, 2007 and that the surgical anesthesia was effective for 420 minutes or until about 7:00 p.m. Id. at 3, ¶¶ 9, 11. Notably, Dr. Barnett admits that at 4:00 p.m. Plaintiff *was* reporting that he was suffering at least some amount of pain but does not explain why he believes the pain would not have continued to increase such that Plaintiff's claim an hour later, that he was suffering severe pain, is not medical supported. Indeed, he fails completely to address Plaintiff's sworn statement that his pain was "severe" and Defendant Reed does not dispute—or, even, address— this point. Thus, there is no evidence of a genuine dispute of fact that Plaintiff was suffering severe pain as early as 5:00 p.m. on September 13, 2007.

Moreover, Plaintiff asserts that at 8:00 p.m., he complained to Reed he was in severe pain and

6

showed her the order requiring he be given Vicodin. (Doc. 150 at 9[5]) Likewise, Plaintiff asserts that when Flores came to his cell in the morning of September 14, 2007, Plaintiff told Flores he had not slept due to pain[6] and requested pain medication. (Doc. 127 at 73) Flores does not recall whether he was aware that the need for pain medication related to surgery (Id.) and fails to cite evidence that disputes that Plaintiff reported the other information. (Doc. 150 at 10-11) Moreover, even Defendants' expert, Dr. Barnett, does not dispute that pain would have resulted from this surgery which necessitated some amount of alleviation.   Indeed, the nursing note made at the time Plaintiff visited the ACH—and which is relied upon by Defendants—indicates that the pain medication must be given *before* the pain becomes severe. Thus, the Court concludes Plaintiff suffered a serious medical condition.

2.  **Deliberate Indifference**

A defendant acts with deliberate indifference when he knowingly fails to respond to a serious medical need and, thereby, inflicting harm on the plaintiff. *See* Farmer v. Brennan, 511 U.S. 825, 837-42 (1994); Jett, 439 F.3d at 1096 [defendant is deliberately indifferent when he purposefully fails to respond to a prisoner's pain].  Deliberate indifference may appear when a defendant denies, delays, or otherwise interferes with medical treatment.  *See* Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988).  Nevertheless, "[d]eliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06).

According to Plaintiff, his pain was obvious, given the bandages on his face and his "bloodshot

---

[5] Though Reed disputes Plaintiff's fact number 27, as evidence for the dispute, she cites to her own declaration which fails to address whether Plaintiff complained of pain. (Doc. 148-7 at 2) Thus, Reed has failed to demonstrate that there is a genuine issue of triable fact that Plaintiff suffered significant pain or that he suffered a serious medical condition.

[6] Plaintiff asserts also that he told Flores that he was having chest pains, was coughing up blood clots and feeling nauseated, dizzy and lightheaded. (Doc. 127 at 73.) There is no evidence these symptoms would have been alleviated by provision of pain medication or were caused by the deprivation of pain medication. (Doc. 148-4 at 4) Indeed, Dr. Barnett asserts that the pain medication would not have addressed these concerns.  However, notably, Flores claims there is a dispute whether Plaintiff reported his condition to him, the evidence cited does not support that a dispute exists. (Doc. 150 at 10-11) Likewise, Dr. Barnett fails to opine whether there was an obligation for Flores to take any action to address these conditions such as summoning other medical care or taking Plaintiff for follow-up medical care.  Given that Plaintiff's discharge orders required him to be seen if these conditions arose, the Court the absence of evidence on this point, the Court , at a minimum, demonstrates professional negligence and, even more, is evidence of deliberate indifference.

(sic) eyes from crying due to the severe pain." (Doc. 127 at 17). He explained his immediate need for medication to Defendant Reed by requesting the medication, presenting the surgeon's discharge orders to her, and by providing her with an administrative complaint while she made her medication distribution rounds at 5:00 p.m. and 8:00 p.m. Id. at 18-19. Plaintiff indicates he informed Defendant Flores of his need for medication by presenting him the prescription at approximately 8:00 a.m. Id. at 19. Likewise, Plaintiff asserts that he reported to Flores that he was suffering chest pains, was coughing up blood clots and that he felt nauseated and light-headed. (Doc. 23 at 21) Plaintiff showed Flores two blood clots that he had aspirated. Id. Despite that the discharge orders indicated that if these conditions were present or Plaintiff experienced excessive pain, he should be seen in the emergency room, Flores did not seek medical attention for Plaintiff. (Doc. 150 at 7)

In response, Defendant Reed argues that "informing Plaintiff that she had no medication for him does not demonstrate a purposeful failure to respond to Plaintiff's pain." (Doc. 148-2 at 6). Likewise, Defendant Flores claims he faxed the Vicodin prescription to the pharmacy at around 8:00 a.m. but did not provide the medication to Plaintiff until 12:30 p.m. (Doc. 148-5 at 2 ¶¶ 6, 9). Both Defendants indicate that it was common for patients to experience pain following a medical procedure. (Doc. 148-4 at 2 ¶ 10; Doc. 148-5 at 2 ¶ 10). However, indisputably, Defendants were aware that Plaintiff had undergone surgery mid-day on September 13, 2007 and were aware that he had not been given pain medication since that time.

Defendants rely heavily on the testimony of Dr. Barnett to indicate that their actions met the standard of care. (Doc. 182 at 3-4). Specifically, Dr. Barnett notes that Defendant Reed possessed "no obligation of find an alternate source of narcotics on Plaintiff's demand" and Defendant Flores properly refused to provide Plaintiff medication when no prescription had been filled. Id.[7] The Court notes that Dr. Barnett also opines that "nurses may need to act as advocates for the patient and alert the attending physician and pharmacy as to problems or concerns that arise." (Doc. 150-1 at 6). As such,

---

[7] Given the nature of Plaintiff's SHU confinement which provides limited access to the outside world and Defendants' position as a medical staff in the SHU, the Court finds this argument unconvincing. Similarly, Dr. Barnett's suggestion that "it has not been the standard of care to administer narcotics liberally because a large number of inmate/patients have [a] history of narcotic dependence" to suggest somehow, without citation to any evidence, that Plaintiff's request for pain medication was for reasons other than the pain he experienced due to the surgery he had recently underwent.

Defendants do not explain why they failed to contact a physician or pharmacy concerning the delay in the distribution of Plaintiff's *already prescribed* narcotic or failed to obtain the medication from the emergency supply which is available to medical staff even when the pharmacy is closed. (Doc. 150 at 13) Though Dr. Barnett asserts that Defendants had no obligation to seek out an alternative source for Plaintiff's medication needs, he fails to support this opinion with any facts. At most, he indicates only that it is common for "delays in the process of medication, especially pain medication" to occur. (Doc. 148-4 at 4) Dr. Barnett does not provide any factual support that delays—such as those evidenced here—are common, what the standard of care requires in this regard or at what point the standard of care requires action.

Toward this end, he asserts that it was appropriate for Reed at 5:00 p.m. to fail to provide medication because *an hour earlier*, Plaintiff's pain—in his view—was not significant. Id. He fails to explain why he believes that despite Plaintiff feeling pain at 4:00 p.m.—which demonstrated the numbing effects of the surgical medication were wearing off—an hour after this, pain medication was still not required. Dr. Barnett surmises that the failure to provide the medication at 5:00 p.m. and 8:00 p.m. may have been because Reed did not perceive that Lopez needed the medication. (Doc. 148-4 at 7) Notably Reed does not assert she was unaware of Plaintiff's need for medication. (Doc. 148-7) Thus, Dr. Barnett's conclusion is unsupported and is rejected.

In addition, though Dr. Barnett concludes that it was reasonable for Flores to fail to address Plaintiff's pain at 8:00 a.m. on September 14, 2007, given only a few hours passed from the time he faxed the order to the pharmacy and the time the medication was provided, Dr. Barnett ignores that by this time, undisputedly, Plaintiff's pain level would have been at its height. Plaintiff attests that his pain level was agonizing which, seemingly it would have been given he described it as "severe" 15 hours earlier and given all possible benefits of the medication administered at the time of the surgery would have dissipated no later than 7:00 p.m., 13 hours before. (Doc. 148-4 at 4-5)

Dr. Barnett fails to address the fact that the LVNs could have provided the prescribed medications without awaiting the pharmacy filling the prescription given they had access to an emergency cache of medication. (Doc. 150 at 13) Also, Dr. Barnett does not explain the apparent inconsistency in his opinion that Defendants were obligated to follow the doctor's orders and his

9

1   opinion that they were, in essence, excused from doing so in this case despite their access to this
2   emergency medication cache.[8] Finally, Dr. Barnett fails to address Flores' failure to summon medical
3   care for Plaintiff when he reported chest pains, coughing-up blood clots, experiencing nausea and a
4   feeling of light-headedness.

5   According to its gatekeeping responsibility, the Court is obligated, to engage in objective
6   screening to ensure that expert testimony "is not only relevant, but reliable." Daubert v. Merrell Dow
7   Pharms., 509 U.S 579, 589 (1993); Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141-42 (1999). A
8   court is not to attempt to determine whether an expert's conclusions are correct, but rather examine
9   only "the soundness of his methodology." Daubert v. Merrell Dow Pharm., Inc., 43 F.3d 1311, 1318
10  (9th Cir. 1995). It is well-established that expert opinions lacking an adequate foundation may not be
11  considered by the Court. *See* Fed. R. Civ. P. 37(c)(1); Sitrick v. Dreamworks, LLC, 516 F.3d 993, 1001
12  (Fed. Cir. 2008) (explaining "[c]onclusory expert assertions cannot raise triable issues of material fact
13  on summary judgment"). The Ninth Circuit has explained that "in the context of a motion for summary
14  judgment, an expert must back up his opinion with specific facts." United States v. Various Slot
15  Machines, 658 F.2d 697, 700 (9th Cir. 1981). Put another way, an expert should "include 'how' and
16  'why' the expert reached a particular result, not merely the expert's conclusory opinions . . . [because]
17  an expert who supplies only an ultimate conclusion with no analysis supplies nothing of value to the
18  judicial process." Finwall v. City of Chicago, 239 F.R.D. 494, 501 (N.D. Ill. 2006).

19  In completing the Court's gatekeeping role, the Court concludes, as discussed above, many of
20  Dr. Barnett's opinions are not supported by evidence and he fails to explain the bases for them. He
21  repeatedly opines Defendants' actions fell within the standard of care but fails to set forth what that
22  standard required. Likewise, his opinions add very little to the analysis of whether Defendants acted
23  purposefully in not responding to Plaintiff's severe pain. Jett, at 1096.

24  On the other hand, Defendants argue that the delayed administration of pain medication cannot
25  establish an Eighth Amendment claim of inadequate medical care, and thus no deliberate indifference

---

[8] Though Dr. Barnett concludes that Defendants "followed orders," exactly which orders Dr. Barnett thinks were followed is not explained. It appears the only order at issue required that Plaintiff be given the pain medication which was not followed until the afternoon of September 14, 2007.

1 may be demonstrated. (Doc. 182 at 6). Defendants rely on a number of cases which provide little
2 assistance here. None address circumstances which are factually similar to those presented here where
3 the inmate was suffering severe pain due to a recent surgery, had been prescribed medication but
4 medical staff, despite knowing of the severe pain, purposefully and deliberately refused to provide it
5 for 18 hours.[9]

6     Contrary to this assertion, the Ninth Circuit has recognized that an Eighth Amendment
7 violation can be based upon a purposeful failure to respond to an inmate's pain. Jett, at 1096.
8 However, the legal authority as to the amount of time over which the deprivation exists is mixed and,
9 clearly, the amount of pain experienced must be considered. In essence, the greater the pain, the lesser
10 the amount of time the medication must be denied before an Eighth Amendment violation is found.

11     In Looman v. Wick, 329 F. App'x 729, 730 (9th Cir. 2009), the Court reversed the trial court's
12 determination that the plaintiff had failed to demonstrate an objectively serious condition sufficient to
13 implicate the Eighth Amendment based upon the failure to provide him pain medication for a period of
14 eight hours after his surgery for a hernia. Citing, Jones v. Johnson, 781 F.2d 769, 771-772 (9th Cir.
15 1986), the Court held, "Under these circumstances, the "severe pain" that Looman allegedly suffered
16 during the delay stated a claim of an objectively, sufficiently serious deprivation under the Eighth
17 Amendment."

18     In Walker v. Benjamin, 293 F.3d 1030, 1039-1040 (7th Cir. 2002), the inmate underwent
19 emergency surgery for a serious hand injury. He was prescribed a strong narcotic to address his post-
20 surgical pain. Id. However, the nurse refused to provide the medication and told the inmate he
21 couldn't have it because she didn't want him to have it and because he "only want[s] to get high." Id.
22 Though the trial court granted the defendants summary judgment, on appeal, the court reversed finding
23 there was a triable issue of fact whether the medication was withheld due to a good faith belief the

---

[9] For example, in Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998), there was a showing only that the medical staff acted negligently. In Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994), there was a showing that antibiotics were withheld for two days but that this delay did not cause harm. In Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990), the court found that the showing constituted only negligence, not deliberate indifference. Finally, in Tufono v. Nwaizugbu, 2011 WL 335556 at 1 (N.D. Cal. Jan. 31, 2011), the court found that the plaintiff failed to demonstrate a serious medical need and, therefore, despite the delay in administering pain medication, had not stated a claim for an Eighth Amendment violation. Here, there is no real dispute Plaintiff was suffering a serious medical condition such to implicate the Eighth Amendment.

11

1  inmate was malingering.  Id.  The court held, "Walker "was not seeking an expensive or
2  unconventional treatment; he just wanted the pain medication that the prison doctor had prescribed for
3  him. [The defendants'] deliberate refusal of it was a gratuitous cruelty...." [Citation]. His claim for the
4  deliberately inadequate treatment of his severe pain thus survives summary judgment." Id. at 1040,
5  citation omitted.  Likewise, the court refused to find the defendant was entitled to qualified immunity
6  because, "The general standard for liability under the Eighth Amendment for refusal to treat a serious
7  medical condition was well-established at the time of these events" Id.

8  Similarly, in Brice v. Virginia Beach Corr. Ctr., 58 F.3d 101, 104-106 (4th Cir. 1995), the
9  court held that summary judgment must be reversed when the defendant had reason to know of the
10 serious medical condition which caused "trauma and pain" and failed to provide treatment for four
11 hours.  Again in Sealock v. Colorado, 218 F.3d 1205, 1210 (10th Cir. 2000), the court held,

> Appellant presented evidence that he suffered from severe chest pain which he reasonable believed was caused by a heart attack. The pain and suffering imposed by Barrett's failure to get him treatment lasted several hours. The Eighth Amendment forbids "unnecessary and wanton infliction of pain." Wilson v. Seiter, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (emphasis added; quotation omitted); cf. also Jones v. Johnson, 781 F.2d 769 (9th Cir.1986) (holding pain and suffering and inability to work resulting from untreated hernia stated cause of action under Fourteenth Amendment). Certainly, not every twinge of pain suffered as the result of delay in medical care is actionable. The evidence in this case, however, sufficiently establishes the objective element of the deliberate indifference test.

18 In doing so, the court reversed the grant of summary judgment to this defendant. Id. at 1213.
19 On the other hand, in Van Court v. Lehman, 137 F. App'x 948, 950 (9th Cir. 2005), the Ninth
20 Circuit found that a delay in providing pain medication for a day does not necessarily demonstrate
21 deliberate indifference to a serious medical need when it appears the deprivation was an "isolated
22 exception" to the medical treatment the plaintiff received overall.  Citing McGuckin v. Smith, 974
23 F.2d 1050, 1060 (9th Cir. 1992) overruled on other grounds by WMX Technologies, Inc. v. Miller,
24 104 F.3d 1133 (9th Cir. 1997) (Neglect of a prisoner's serious medical need which is an "isolated
25 occurrence" or an "isolated exception," to the prisoner's overall medical treatment ordinarily will not
26 give rise to a finding that the defendant was deliberately indifferent.)  Here, the evidence fails to
27 demonstrate the overall quality of care Plaintiff received or how much of the care given, involved
28 Reed or Flores.  Indeed, it is undisputed that Plaintiff had not been seen at the ACH before September

13, 2007.  (Doc. 150 at 8)  Thus, it does not appear that the rationale of Van Court applies.

Indeed, courts have held that an egregious, single failure to treat an inmate "strongly suggests that the defendant's actions were motivated by 'deliberate indifference' to the prisoner's medical needs. See, e.g., Ortiz v. City of Imperial, 884 F.2d 1312, 1313–14 (9th Cir.1989) (per curiam); Hunt v. Dental Dept., 865 F.2d 198, 201 (9th Cir.1989). In sum, the more serious the medical needs of the prisoner and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established "deliberate indifference" on the part of the defendant."  McGuckin v. Smith, 974 F.2d 1050, 1060-61 (9th Cir. 1992) overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997).  Based upon the foregoing legal authorities, the Court finds that Plaintiff has demonstrated Defendants displayed deliberate indifference to his serious medical condition.

Having decided Plaintiff has established there is no triable issue of fact that Defendants were aware of Plaintiff's pain and were deliberately indifferent to it, the Court has little hesitation in concluding Plaintiff was harmed.[10]  Plaintiff underwent an invasive surgical procedure which was anticipated to cause severe pain such that the doctor prescribed a narcotic designed to alleviate moderate-to-moderately severe pain and which, in fact, caused severe pain.  (Doc. 150 at 12)  Despite this severe pain, Defendants allowed Plaintiff to suffer for 18 hours without providing pain medication that had been prescribed; this suffering constitutes "harm."  Estelle v. Gamble, 429 U.S.at 103 ["The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation."]  Therefore, the Court recommends Plaintiff's motion for summary judgment be **GRANTED** and Defendants' motion for summary judgment be **DENIED**.

### B. Qualified Immunity

Qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The doctrine of qualified immunity "balances two important interests – the need to hold public officials accountable

---

[10] Moreover, Defendants do not challenge this issue. (*See* Docs. 142, 148-2)

13

1  when they exercise power irresponsibly and the need to shield officials from harassment, distraction,
2  and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 129 S.
3  Ct. 808, 815 (2009).
4        The threshold inquiry to a qualified immunity determination is whether the facts alleged, when
5  taken in the light most favorable to the plaintiff, demonstrate that the official's conduct violated a
6  statutory or constitutional right. Id. Saucier v. Katz, 533 U.S. 194, 201 (2001). If a constitutional
7  violation occurred, the court must next determine whether the statutory or constitutional right was
8  "clearly established." Id. A right is "clearly established" in the context of qualified immunity if "it
9  would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted' .
10 . . or whether the state of the law [at the time of the violation] gave 'fair warning' to the official[] that
11 [his] conduct was unconstitutional." Clement, 298 F.3d at 906 (quoting Saucier, 533 U.S. at 202).
12       Defendants contend that they are entitled to qualified immunity as no evidence suggests
13 Plaintiff's Eighth Amendment rights were violated. (Doc. 148-2 at 7). However, when considered in
14 the light most favorable to the Plaintiff, the facts demonstrate a violation of Plaintiff's Eighth
15 Amendment right. Defendants, in fact, acknowledge that it is well-established that prison officials
16 cannot ignore an inmate's medical needs. Id. at 5. Thus, the Court does not find that Defendants are
17 entitled to the protections of qualified immunity. Walker, 293 F.3d at 1040.

18     **C.  California Medical Malpractice Claim**
19       Both parties move for summary judgment on the claim of medical malpractice. (Docs. 127 and
20 148). Under California law, to demonstrate a cause of action for medical malpractice, a plaintiff must
21 allege: "(1) a duty to use such skill, prudence, and diligence as other members of the profession
22 commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between
23 the negligent conduct and the injury; and (4) resulting loss or damage." Johnson v. Superior Court,
24 143 Cal.App 4th 297, 305 (2006); Hanson v. Grode, 76 Cal.App.4th 601, 606 (1999)(same). At issue
25 is whether Defendants have adequately demonstrated that no genuine issues of material fact exist as to
26 a breach of the standard of care.
27       As the medical malpractice standard of care lies within the particular knowledge of an expert,
28 "expert testimony is required [under California law] to prove or disprove that the defendant performed

14

1   in accordance with the standard of care." Johnson,143 Cal. App. 4th at 305 (internal citations and
2   quotations omitted).  A defendant is entitled to summary judgment where a defendant supports his
3   motion for summary judgment concerning the standard of care and a plaintiff fails to produce his or
4   her own expert. Rosado v. Alameida, 497 F. Supp. 2d 1179, 1196 (S.D. Cal. 2007).  However,
5   California courts do not require expert testimony where the alleged medical malpractice lies within the
6   common knowledge of a layperson. George v. Sonoma Cnty. Sheriff's Dep't, 732 F. Supp. 2d 922, 948
7   (N.D. Cal. 2010) (Expert testimony regarding the standard of care was not required on a motion for
8   summary judgment where nurse failed to provide a patient food to inmate prior to discharge); Flowers
9   v. Torrance Mem'l Hosp. Med. Ctr., 8 Cal.4th 992, 1001 (1994) ("The classic example, of course, is
10  the X-ray revealing a scalpel left in the patient's body following surgery.").  The California Supreme
11  Court has explained that this "common knowledge" exception applies where a "layperson is able to
12  say as a matter of common knowledge and observation that the consequences of professional treatment
13  were not such as ordinarily would have followed if due care had been exercised." Flowers, 8 Cal.4th at
14  1001 (internal citations and quotations omitted).

15         The reasoning presented in Massey v. Mercy Med. Ctr. Redding, 180 Cal.App.4th 690 (2009),
16  is instructive to the matter at hand.  In Massey, a post-operative patient with a known-risk of falling
17  was left alone in a standing position for 15 minutes. Id. at 690. The patient fell and fractured his back.
18  Id.  In determining whether the common knowledge exception applied, the California court considered
19  that the nurses caring for the plaintiff were on notice that the patient required ambulatory assistance.
20  Id. at 694-695.  The court also noted that "common knowledge" may be inferred "following []
21  [i]nsufficient attendance on helpless [] patient[s]." Id. at 696 (internal citations and quotations
22  omitted).

23         Here, Defendants present Dr. Barnett's declaration to demonstrate that Defendants' met the
24  requisite standard of care on September 13-14, 2007. *See* (Doc. 150-1).  Dr. Barnett opines that an
25  LVN may only distribute medication that is prescribed by a physician and thus, Defendants acted
26  within the standard of care by not administering any pain medication "when the order for Vicodin had
27  not yet been filled by the prison pharmacy." (Doc. 150-1 at 4-5 ¶¶ 15, 18, 21).  Dr. Barnett also opines
28  that a nurse's duty is to follow orders. Id. at 5-6 ¶ 24.  Finally, he indicates that "[f]rom time to time,

1 nurses may need to act as advocates for the patient" without providing sufficient support as to when this need may arise. Id. Given that Plaintiff failed to present expert testimony, Defendants conclude that they are entitled to summary judgment on the California medical malpractice claim. (Doc. 182 at 4).

In response, Plaintiff relies on the "common knowledge" exception. (Doc. 164 at 22). He emphasizes that the crux of his medical malpractice claim is that Defendants ignored an existing physician's order and that Defendants ignored his requests for urgent care. Id. at 22-23. Thus, Plaintiff concludes, and the Court agrees, that the issue of insufficiently attending a post-operative patient lies within the common knowledge of a layperson. *See* (Doc. 164 at 22); *see e.g.*, Massey v. Mercy Med. Ctr. Redding, 180 Cal. App. 4th 690, 103 Cal. Rptr. 3d 209, 214 (2009).

Dr. Barnett's opinion seemingly ignores the fact that the medication had already been prescribed by the time Plaintiff requested it. Contrary to Dr. Barnett's discussion, this is not a case of a post-operative patient receiving insufficient medication, demanding more medication than is medically indicated or a case in which Plaintiff requested medication to which he was not entitled; rather this is a case where the Plaintiff did not receive *any* medication. The Court finds that the issue of whether a nurse properly attended a post-operative patient and followed a physician's orders lies within the common knowledge of a layperson.[11]

For the reasons set forth above, the Court does not find that the opinions of Dr. Barnett demonstrate a triable issue of material fact. Moreover, because the Court finds that Defendants acted with deliberate indifference to Plaintiff's severe pain, the Court recommends Plaintiff's motion for summary judgment as to the medical malpractice claim be **GRANTED** and Defendants' motion be **DENIED**.

///

---

[11] In addition to his motion for summary judgment on his Eighth Amendment claim and his California medical malpractice claim, Plaintiff requests the Court to "declare [his] rights, and that the violations occurred." (Doc. 127 at 22). In addition he requests that the Court revoke Defendants' "certifications and licenses (sic) of a medical nature. Id. As amply discussed above, the Court cannot make any factual determinations on this motion for summary judgment beyond the undisputed facts noted herein. Furthermore, revocation of Defendants' medical certifications is beyond the jurisdiction of this Court. Thus, the Court recommends that Plaintiff's request for injunctive relief in his motion for summary judgment be **DENIED.**

**IV.     FINDINGS AND RECOMMENDATIONS**

For the reasons set forth above, the Court **RECOMMENDS:**

1.      Plaintiff's motion for summary judgment (Doc. 127) be **GRANTED**;

2.      Defendants' motion for summary judgment (Doc. 148) be **DENIED**.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **14 days** after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **October 18, 2013**            **/s/ Jennifer L. Thurston**
                                          UNITED STATES MAGISTRATE JUDGE